<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEEPA GUJJA, M.D.,<br><br>Plaintiff,<br><br>v.<br><br>INPATIENT SERVICES OF NEW JERSEY, P.C.,<br><br>Defendant. | Civil Action No. 21-19416 (MAS) (DEA)<br><br>**MEMORANDUM OPINION** |

<u>**SHIPP, District Judge**</u>

This matter comes before the Court on Defendant Inpatient Services of New Jersey, P.C.'s ("ISNJ") Motion to Partially Dismiss Plaintiff Deepa Gujja's ("Gujja") Complaint. (ECF No. 6.) Gujja opposed (ECF No. 12), and ISNJ replied (ECF No. 13). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants in-part and denies in-part ISNJ's Motion.

**I.   BACKGROUND**

This story begins on November 1, 2018, when Gujja entered into an Employment Agreement (the "Agreement") with ISNJ. (Notice of Removal Ex. A ("Compl.") ¶ 6, ECF No. 1-1.) Relevant to the looming quarrel, the Agreement provided that ISNJ would pay Gujja $179 an hour to work at various short-staffed medical facilities under a schedule set by ISNJ. (*Id.*) If ISNJ wanted to terminate the Agreement without cause, the Agreement required ISNJ to provide Gujja with 90-days' notice. (*Id.* ¶ 9.)

During Gujja's employment with ISNJ, she served as a medical director at several medical facilities. (*Id.* ¶ 5.) Beginning in January 2020, Gujja primarily worked at Southern Ocean Medical Center where she typically worked fifteen twelve-hour shifts per month. (*Id.* ¶ 11.) But once the COVID-19 pandemic began devastating New Jersey in April 2020, ISNJ's Director of Operations reassigned Gujja to serve at the Palisades Medical Center ("Palisades"). (*Id.* ¶ 57.) Gujja told the Director that she "hoped she would receive the same pay rate as other physicians at that facility." (*Id.* ¶¶ 58.) In response, the Director explained that Gujja would receive $225 an hour for shifts worked at that site through April 15, 2020. (*Id.* ¶ 59.) Gujja then worked four shifts at Palisades, totaling 44 hours, but ISNJ only paid her $179 per hour. (*Id.* ¶¶ 60-61.)

In September 2020, ISNJ began scheduling Gujja for fewer shifts than it customarily did. (*Id.* ¶¶ 12-13.) According to the Complaint, this change was because the facility where she was assigned at the time became fully staffed and did not need as many physicians. (*Id.*) Later that month, ISNJ notified Gujja that it decided to terminate her effective December 15, 2020, providing 90-days' notice. (*Id.* ¶ 18.) Before the end of Gujja's employment, ISNJ continued to schedule her—specifically, twenty-six shifts in three months. (*Id.* ¶ 16.) Gujja's Complaint also alleges that ISNJ failed to pay her expenses, bonuses, and wages to which she was entitled. (*Id.* ¶¶ 20-48.)

Gujja sued in state court, and ISNJ removed. (*See* Notice of Removal, ECF No. 1.) Gujja's Complaint asserts six counts against ISNJ: (1) breach of contract for unpaid expenses, (2) breach of contract for unpaid bonuses, (3) breach of contract for unpaid wages, (4) unjust enrichment, (5) promissory estoppel for unpaid hazard pay, and (6) promissory estoppel for lost wages. (*See generally* Compl.) On December 9, 2021, ISNJ filed its Motion, requesting dismissal of Counts IV, V and VI. (*See* Def.'s Mot. to Dismiss, ECF No. 6.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2)[1] requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "review[] the complaint to strike conclusory allegations." *Id.* The court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, however, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

---

[1] Unless otherwise noted, all references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

### III. DISCUSSION

ISNJ argues that the Court should dismiss the quasi-contractual claims in Counts IV, V, and VI because "the subject matter of the claims is governed by the express terms of an existing agreement," and the Agreement governs Gujja's allegations. (Def.'s Moving Br. 1, ECF No. 6.)

Gujja argues that under Rule 8(d), she can assert claims in the alternative, and more specifically, that courts in this District permit both unjust enrichment and breach of contract claims to survive a motion to dismiss (Pl.'s Opp'n Br. 9-10, ECF No. 12.) Gujja further contends that the Agreement does not govern the subject matter of the promissory estoppel claims. (*Id.* at 12.)

#### A. Unjust Enrichment Claim

To start, the Court agrees that dismissal is appropriate for the Complaint's unjust enrichment claim. Recovery for unjust enrichment cannot exist when there is an enforceable agreement among parties. *Hatteras Press, Inc. v. Avanti Comput. Sys. Ltd.*, No. 16-5420, 2017 WL 2838349, at *5 (D.N.J. June 30, 2017). Although Gujja may plead claims in the alternative under Rule 8(d), absent a claim that the Agreement is invalid or that Gujja performed work beyond that covered by the Agreement, the Court "cannot sustain claims founded on quasi-contractual theories." *Freightmaster USA, LLC v. FedEx, Inc.*, No. 14-3229, 2015 WL 1472665, at *6 (D.N.J. Mar. 31, 2015).

Here, Gujja alleges breach of contract claims because ISNJ allegedly failed to pay her expenses, bonuses, and wages to which she claims she is entitled and the company failed to pay her during her employment. (Compl. ¶¶ 20-48.) Gujja's unjust enrichment claim is based on the same underlying conduct as her breach of contract claims. (*Id.* ¶ 50 (listing unpaid expenses, bonuses, and wages as the basis of the unjust enrichment claim).) Critically, ISNJ does not dispute the validity or enforceability of the Agreement. (Def.'s Moving Br. 6-7 (admitting that Gujja's unjust enrichment claim for unpaid expenses, bonuses, and wages is governed by the Agreement).)

Although pleading in the alternative is permissible under Rule 8(d)(2), courts in this District regularly dismiss unjust enrichment claims that are duplicative of a complaint's breach of contract claims when the governing agreement is undisputed.[2] *See Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 170 n.8 (3d Cir. 2014); *SAT Agiyar, LLC v. 7-Eleven, Inc.*, No. 19-19994, 2020 WL 3546821, at *6 (D.N.J. June 30, 2020) (dismissing plaintiff's unjust enrichment claim because it relied upon an existing, valid, and undisputed agreement). The Court, accordingly, dismisses Gujja's unjust enrichment claim.

### B. Promissory Estoppel Claims

The Court turns to Gujja's two promissory estoppel claims. First, Gujja contends that ISNJ promised to pay her $225 per hour for shifts worked at Palisades but instead paid her $179 per hour. (Compl. ¶¶ 59-62.) Next, Gujja alleges that ISNJ scheduled her to work only twenty-six shifts from September through December 2020, lower than the fifteen shifts per month that she normally worked. (*Id.* ¶¶ 68-79.)

To start, a plaintiff sets forth a claim for promissory estoppel by alleging, "(1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Gage v. Preferred Contractors Ins. Co. Risk*

---

[2] True, as Gujja argues, courts in this District do not *blindly* dismiss duplicative claims at the motion-to-dismiss stage and often decline to dismiss unjust enrichment claims based on the same conduct as that underlying breach of contract claims. *Cf. DeFrank v. Samsung Elecs. Am., Inc.*, No. 19-21401, 2020 WL 6269277, at *21 (D.N.J. Oct. 26, 2020) (allowing the unjust enrichment claim to proceed because the plaintiffs contend the warranty is unconscionable and does not govern the matter); *Verizon N.J., Inc. v. Ntegrity Telecontent Servs.*, 219 F. Supp. 2d 616, 635 (D.N.J. 2002) (denying the defendant's motion to dismiss "in light of Ntegrity's request for contract cancellation"). But from what the Court gleans, those courts allowed unjust enrichment claims to proceed where the underlying contract was in dispute. Authority Gujja cites, in fact, highlights this distinction. *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 735 (D.N.J. 2008) (reasoning that dismissal was premature because, although the plaintiff alleged a contractual relationship with the defendant, the court had yet to determine whether a contract existed."). Here, Gujja and ISNJ voluntarily entered into the Agreement and neither party disputes its validity or enforceability.

*Retention Grp. LLC*, No. 19-20396, 2022 WL 88291, at *2 (D.N.J. Jan. 7, 2022) (quoting *Filippelli v. Ingis*, No. A-2653-19, 2021 WL 5819135, at *3 (N.J. Super. Ct. App. Div. Dec. 7, 2021)). Although plaintiffs may plead in the alternative under Rule 8(d)(2), they cannot assert both breach of contract and promissory estoppel claims unless the contract is disputed or the matter at issue is beyond that covered in the contract. *See Freightmaster USA*, 2015 WL 1472665, at *6; *Zydus Worldwide DMCC v. Teva API Inc.*, 461 F. Supp. 3d 119, 141 (D.N.J 2020) (dismissing the promissory estoppel claim because the injury alleged was "intrinsic to the terms and conditions of the [letter of intent], and [was] indistinguishable from a breach of contract"); *Smith v. CitiMortgage, Inc.*, No. 15-7629, 2015 WL 12734793, at *8 (D.N.J. Dec. 22, 2015) (dismissing the promissory estoppel claim because it was "based on the same facts and theory as the[] breach of contract claim"). "[P]romissory estoppel generally serves as a stop-gap where no valid contract exists to enforce a party's promise." *Kiss Elec., LLC v. Waterworld Fiberglass Pools, N.E., Inc.*, No. 14-3281, 2015 WL 1346240, at *5 (D.N.J. Mar. 25, 2015). With the proper standard above, the Court turns to each of Plaintiff's promissory estoppel claims.

### 1. Gujja's Promissory Estoppel Claim for Unscheduled Shifts (Count VI) Fails.

The Court dismisses Gujja's promissory estoppel claim that she lost wages because ISNJ scheduled her for less shifts than usual from October 2020 to December 2020. The plain language of the Agreement governs this claim. It provides that ISNJ "shall direct the days and hours that [Gujja] shall perform . . . her duties pursuant to this Agreement." (Compl. Ex. 1 ("Employment Agreement") ¶ 2.1.) Thus, the Agreement grants ISNJ the authority and discretion to set Gujja's schedule. To be sure, the Court views nothing in the Agreement that requires ISNJ to provide fifteen twelve-hour shifts per month nor does Gujja allege that the Agreement requires ISNJ to do so.

Separately, the claim fails because the Complaint does not allege that ISNJ made a clear and definite promise to schedule Gujja for fifteen twelve-hour shifts per month. *See Gage*, 2022 WL 88291, at *2 (quoting *Filippelli*, 2021 WL 5819135, at *3). Gujja only asserts that fifteen twelve-hour shifts per month was her "typical" schedule, but she does not assert that ISNJ made any promise indicating the days or hours she would work. (Compl. ¶¶ 69-70.) That is insufficient to sustain a promissory estoppel claim. *Automated Salvage Transport., Inc., v. NV Koninklijke KNP BT,* 106 F. Supp. 2d 606, 622 (D.N.J. 1999) (dismissing plaintiff's promissory estoppel claim because they failed to allege that the defendant made a "concrete promise.") The Court, accordingly, dismisses Count VI.

### 2. The Court Declines to Dismiss Gujja's Promissory Estoppel Claim for Additional Pay.

Gujja plausibly states a promissory estoppel claim that ISNJ promised her additional pay.[3] Addressing the first and second promissory estoppel factors, Gujja properly alleges that ISNJ made her a clear and definite promise with the expectation that she would rely on it. When Gujja requested to be paid the same as other peers at Palisades, ISNJ's Director of Operations informed her that she would "receive a pay rate of $225 per hour for shifts worked at [Palisades] through April 15, 2020." (Compl. ¶ 59.) Regarding the third and fourth factors, Gujja also asserts she reasonably relied on the promise which resulted in a definite and substantial detriment because she

---

[3] To resolve this claim, the Court attempted to review the exhibits referenced in the Complaint, which should have been attached to ISNJ's Notice of Removal. On the Court's review, however, no exhibits were included. (*See* Notice of Removal.) Instead, the Court was forced to trek to the state court docket, where curiously, Gujja had attached the exhibits. The Court now takes judicial notice of the documents filed in *Gujja v. Inpatient Services of New Jersey, P.C.*, L-2679-21 (filed N.J. Sup. Ct. App. Div. Oct. 10, 2021). *See Huertas v. Taylor*, No. 17-7232, 2018 WL 1317861, at *2 (D.N.J. Mar. 14, 2018) (taking judicial notice of public record). The Court will chalk up ISNJ's failure to attach the Complaint's exhibits as human blunder, however, the Court orders ISNJ to re-file the Complaint *with the exhibits* that Gujja included within seven days of this Memorandum Opinion and accompanying Order.

worked four shifts at the facility and missed out on $2,208 which she thought she was earning. (*Id.* ¶¶ 60-62, 65.)

ISNJ urges the Court to dismiss this claim because Gujja's hourly rate is governed by the Agreement. (Def.'s Moving Br. 6,8.) ISNJ's argument fails. Most importantly, Gujja alleges that subsequent to this Agreement, ISNJ made a separate and distinct promise regarding "Hazard Pay" specifically covering work at Palisades Medical Center from April 9, 2020 through April 15, 2020. (Compl. ¶¶ 57, 59.) Furthermore, if the Court were to credit ISNJ's argument that the Agreement covers this issue, the Court still surmises that Gujja may have a claim in some form. Although no party raises the argument that the e-mail communication in which ISNJ's Director of Operations promised Gujja increased pay altered the Agreement, the e-mail communication in which an ISNJ representative promised Gujja increased pay could arguable constitute a modification of the parties' previous Agreement.[4] In any event, the Court concludes that the instant facts fit within the exception to the rule that promissory estoppel is a quasi-contract theory and "cannot be maintained where a valid contract fully defines the parties' respective rights and obligations." *Jones v. Marin*, No. 07-738, 2009 WL 2595619, at *6 (D.N.J. Aug. 20, 2009). Here, whether a contract exists regarding the $225 an hour Palisades pay rate remains in dispute. *See Freightmaster*, 2015 WL 1472665, at *6 (ruling that claims founded on quasi-contractual theories cannot be sustained unless the existence of a controlling agreement is disputed). Construing the facts in the light most favorable to Gujja, and because the parties do not clarify whether the e-mail correspondence was incorporated into the Agreement, the Court finds that Gujja sufficiently alleges the elements of a promissory estoppel claim and declines to dismiss Count V.

---

[4] To be sure, Gujja does not allege a breach of contract claim for the promised, but unpaid, wages. (*See generally* Compl.)

8

## IV.  CONCLUSION

For the foregoing reasons, the Court grants-in-part and denies-in-part ISNJ's motion to dismiss. An appropriate order will follow.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE